(93 App. Div. 577)

## MACK v. TOWN OF SHAWANGUNK.

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. HIGHWAYS—INJURIES TO TRAVELERS—IMPUTED NEGLIGENCE.

Where plaintiff, at the time of her injury by being driven off the edge of a highway bridge, was riding at night as the guest of her companion, who was driving, she was not chargeable with the latter's negligence.

2. SAME—HIGHWAY COMMISSIONER—NEGLIGENCE.

Where a town had over 200 miles of highways and between 300 and 400 bridges of upwards of three planks, and as many more smaller ones, its highway commissioner was not guilty of negligence in failing to place guard rails on the sides of a nine-foot bridge, justifying a recovery for injuries to a traveler by being driven off the same on a dark night, it appearing that the highway was one from which a traveler would not naturally depart, and the approaches of the bridge being properly safeguarded by rails.

Appeal from Trial Term, Ulster County.

Action by Elsie B. Mack, by her guardian ad litem, against the town of Shawangunk. From a judgment in favor of plaintiff and from an order denying a motion for a new trial, defendant appeals. Reversed.

Upon the 4th day of February, 1903, the plaintiff had been to an evening party, and was returning upon the highway from Crawford to Walker Valley, in the defendant town. She was in the company of one Conklin, who was driving a horse that was kind and safe. In returning home it was necessary to cross a bridge upon the said highway. This bridge was nine feet between abutments, and, while there is some conflict of testimony as to the exact length of the planks, the weight of the testimony is to the effect that they were from 12 to 14 feet in length. The bridge had no railing upon it, but from the rail fence which approached it from either side three or four rails were run to the bridge. These rails ran onto the bridge from a foot and a half to two feet, and as far as the second or third plank. There is some evidence that these rails simply came upon the ground before the bridge was reached, but the weight of evidence is to the effect that they actually ran upon the bridge. Upon the night in question at about 1 o'clock the horse and buggy went off the southerly side of this bridge into the stream below. From this fall plaintiff claims to have sustained the injuries for which she has recovered in this action. Upon the trial at circuit she received a verdict of $5,000. This verdict the trial court refused to set aside, and from the verdict entered thereupon and the order denying a motion for a new trial this appeal has been taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

J. N. Vanderlyn (John J. Linson, of counsel), for appellant.
John C. R. Taylor, for respondent.

SMITH, J. No question is raised upon the contributory negligence of the plaintiff. The night was very dark. It was raining. She was riding as the guest of Conklin, with whose negligence she cannot be charged.

The negligence of defendant's highway commissioner, however, we are of opinion has not been proven. It is perhaps true that, if this bridge had been guarded, this accident would not have happened. The

¶ 1. See Negligence, vol. 37, Cent. Dig. § 147.

existence of this fact, however, is not enough to impose liability upon the defendant town. The highway commissioner must have failed to exercise reasonable care in not guarding the sides of this bridge before the defendant can be charged with damages for injuries occasioned by the lack of guards. There is considerable evidence as to whether this bridge was upon a curve. Even if it were, the curve was by no means a sharp one. The danger to be apprehended from unguarded sides of a bridge or embankment upon a curve would be from lack of a railing upon the outer edge of the curve, rather than upon the inner side. There is some evidence as to the wheel tracks of this carriage. The rails extending from the fence onto the bridge upon the easterly side, from which the carriage came, were undisturbed, so that the carriage must have entered upon the bridge at least a foot and a half or two feet from the edge of the plank. At about the third plank, however, the evidence would seem to show that the left carriage wheel first left the bridge. From this bridge about ten feet is a turn in the road to the south, or left, as they were going. The natural inference would seem to be that either the horse or the driver thought, in the darkness, that this turn in the road had been reached, and that this mistake was the cause of the accident. It appears that this town had in it over 200 miles of highways; that there were between 300 and 400 bridges upon which were from three planks upwards, and as many more smaller ones. The highway was itself well defined, and upon either side there were large rocks and stones, which would warn the traveler in the nighttime should he get off therefrom. Coming up to this bridge, then, with a well-defined highway, with barriers from the ends of the rail fence alongside of the road up onto the bridge across a stream only nine feet wide between the abutments of the bridge, it would seem to us to be an unreasonable rule to hold the commissioner of highways personally liable for failure to side-guard that bridge. And yet, if this town is liable to pay to this plaintiff the damages sustained, the commissioner of highways is legally liable to reimburse the town for those damages paid.

It is probably impossible to reconcile all of the cases upon this question. Each case arises under circumstances peculiar to itself. In many of them the courts have held that the question of negligence was for the jury to determine. In some of them the courts have decided that a preliminary question arose for the court to determine, to wit, whether there was sufficient evidence of the commissioner's negligence to permit the jury to pass thereupon. The case of Waller v. The Town of Hebron, 5 App. Div. 577, 39 N. Y. Supp. 381, is a good illustration of the class of cases where the court has held that there was not sufficient evidence upon which to allow the jury to find negligence of the highway commissioner. No case is cited, and I have been unable to find any, where, upon a bridge nine feet between abutments, upon a road straight, or substantially straight, the court has allowed a recovery of damages for negligence in not placing a guard upon the sides thereof. When, in addition to these facts, it appears that the highway was one from which a traveler would not naturally depart, and that the approaches of the bridge were properly safeguarded by rails extending from the fence onto the bridge, it becomes the more difficult to discover

any legal ground of liability. To uphold the verdict in this case would practically be to authorize a recovery in all cases where a traveler went over the side of a bridge that was not guarded, where the bridge was only nine feet between abutments and the planking twelve feet wide. To this extent we are not prepared to go. We are unable to find any facts which, in our judgment, can sustain this verdict.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.